KAUFMAN MALCHMAN & KIRBY,
P.C., a professional corporation,
Plaintiff,

v.

HASBRO, INC., Defendant.

No. 93 Civ. 4962 (RLC).

United States District Court,
S.D. New York.

July 5, 1995.

Kaufman Malchman & Kirby, P.C., New York City (Jeffrey H. Squire, of counsel), pro se Plaintiff.

Patterson, Belknap, Webb, Tyler LLP, New York City (Kim J. Landsman, of counsel), for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Hasbro, Inc. ("Hasbro") moves pursuant to Rule 12(b)(6), F.R.Civ.P., to dismiss plaintiff's complaint in its entirety, and in the alternative pursuant to Rule 56, F.R.Civ.P., for summary judgment against plaintiff on all claims.

1. Although Hasbro removed this case to federal

### I.

■ For the purposes of this motion to dismiss, the court will assume the truth of the following facts asserted in plaintiff's complaint, and it will not dismiss the cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Hasbro manufactures toys and games, many of which are subject to patent licenses. Under federal law, a patent licensee may not require a licensor to pay royalties on the patent after the patent has expired. *Brulotte v. Thys Co.,* 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964). Darren Suprina, a Hasbro shareholder, became concerned that Hasbro was paying royalties to the inventors of several games beyond the legal life of the patent and hired plaintiff Kaufman Malchman & Kirby, P.C. ("KMK"), a law firm, to protect his interests.

On May 10, 1991, an attorney at KMK wrote to the president of Hasbro demanding that Hasbro stop making such royalty payments and that it bring a lawsuit to recover any such payments that it had already made. The letter also stated that Suprina would bring a derivative lawsuit if the corporation took no action. Hasbro responded on December 17, 1991, stating that the board of directors had decided not to stop making royalty payments and not to take legal action. On April 14, 1992, KMK sent another letter reiterating Suprina's demand, and on June 17, 1992, defendant's attorney met with a KMK attorney. Suprina subsequently concluded that Hasbro had substantially complied with the demand, and he took no action to commence a derivative lawsuit. Plaintiff then commenced this action seeking legal fees in connection with its representation of Suprina.

### II.

■ Plaintiff argues that federal law regarding attorneys' fees governs this action because "the principle that underlies plaintiff's complaint—the limitation of patents to their terms—arises under federal patent law." [1] (Pl.'s Mem. in Opp'n to Def.'s Mot. to

court, plaintiff originally filed the lawsuit in state

Dismiss or, in the Alternative, for Summ.J. at 7.) Plaintiff is correct in arguing that federal courts have exclusive subject matter jurisdiction over all civil actions "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338 (1988); *see also Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988). However, it is not enough to merely plead, as plaintiff has done here, that the case relates to patent law, because "the jurisdictional test under section 1338(a) is not confined solely to the 'relating to patents' language of the statute, but requires also that the action be one 'arising under' the federal patent laws." *Speedco, Inc. v. Estes,* 853 F.2d 909, 911 (Fed.Cir. 1988). A cause of action will arise under federal patent law when it involves the validity, scope or infringement of a patent. *Ballard Medical Prods. v. Wright,* 823 F.2d 527, 531 (Fed.Cir.1987); *see also Boggild v. Kenner Prods.,* 853 F.2d 465, 468 (6th Cir.1988). When patent issues are merely implicated incidentally in a cause of action, however, federal courts do not have jurisdiction of the case pursuant to § 1338. *Boggild,* 853 F.2d at 468. In particular, where a licensee claims that the Supreme Court's holding in *Brulotte* renders invalid the licensee's agreement to pay royalties for use of a patented item beyond the expiration date of the patent, that claim arises under state contract law and not under the federal patent laws. *Boggild,* 853 F.2d at 468.

■ Here, plaintiff claims that it would have brought a derivative suit to enforce Hasbro's alleged right not to pay royalties to people whose patents on products sold by Hasbro had expired. Since the case would have concerned only patents that had expired, the scope, validity or infringement of the patents would not have been at issue, and the case would not have arisen under the patent laws. Rather, the case would have been an attempt to enforce Hasbro's contract rights pursuant to *Brulotte,* (*see* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ.J. at 7 n. 4), and thus it would have arisen under state contract law.

Plaintiff attempts to escape this clear restriction on federal subject matter jurisdiction by noting that in *S & T Manufacturing Co. v. County of Hillsborough, Fla.,* 815 F.2d 676 (Fed.Cir.1987), "the issue presented was a non-patent question yet the Federal Circuit assumed appellate jurisdiction of a decision that a settlement of a patent infringement action had been reached." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ.J. at 7–8 n. 4.) *S & T Manufacturing Co.* is completely distinguishable on the grounds that there the federal district court had jurisdiction pursuant to 28 U.S.C. § 1338 because the case involved a patent infringement dispute. *S & T Mfg. Co.,* 815 F.2d at 677. Therefore, the Federal Circuit had jurisdiction pursuant to 28 U.S.C. § 1295(a)(1), which grants the Federal Circuit exclusive jurisdiction of appeals from federal district courts where the jurisdiction of the district court "was based, in whole or in part, on section 1338." 28 U.S.C. § 1295(a)(1) (1988). Consequently, that case has no bearing on this court's jurisdiction to hear this case, which does not involve the scope, validity or infringement of any patents and thus does not fall under § 1338. Since this court has diversity jurisdiction, it will apply state law, not federal law, to the issue of attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975).

### III.

■ The role of a federal court sitting in diversity is to apply the substantive law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Where the substantive law of the *forum* state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *The Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.1994). Defendant argues that for purposes of the motion to dismiss, Rhode Island law controls the issue of attorneys' fees because defendant is a Rhode

court. Plaintiff's insistence that this case arises under federal law is odd, to say the least, in light of the fact that state courts cannot hear cases arising under the patent laws.

722

Island corporation with its principal place of business there. Plaintiff applies both Rhode Island and New York law to the dispute. Since, as the following discussion shows, plaintiff has no basis for recovery under the law of either state, there is no conflict of law and the court need not decide which law governs.

Rhode Island common law incorporates the American rule regarding attorneys' fees, which is that the parties bear their own costs in the absence of a specific statutory or contractual provision to the contrary. *Eleazer v. Ted Reed Thermal, Inc.*, 576 A.2d 1217 (R.I.1990). There was no contract between defendant and plaintiff, so there is no contractual provision that governs here. Nor is there a statutory entitlement to attorneys' fees—the only instance in which attorneys' fees may be recovered in connection with a shareholder's derivative lawsuit in Rhode Island is when the court finds that the action was brought without reasonable cause and then awards fees to the defendant. R.I.Gen. Laws § 7–1.1–43.1 (1992).

Plaintiff urges the court to create an exception to the American rule by allowing plaintiffs to recover attorneys' fees when their action has rendered a benefit to the defendant. Plaintiff acknowledges that Rhode Island courts have never found such an exception to exist but argues that in *Malinou v. Powers*, 114 R.I. 399, 333 A.2d 420, 423 (1975), the Rhode Island Supreme Court "approached such a holding." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ.J. at 10.) In that case, the court noted that although attorneys' fees are not generally available, "overriding considerations have sometimes persuaded American courts to fashion exceptions to that rule in equity proceedings, the most common being applied where a plaintiff has successfully maintained a class action of benefit both to himself and to the members of the class." *Malinou*, 333 A.2d at 423. The court then denied the plaintiff attorneys' fees, finding he had failed to demonstrate that he fell into this exception. *Id.* at 424.

The court in *Malinou* did no more than to observe that other courts have created a substantial benefits exception, and in the

twenty years since that opinion Rhode Island courts have not taken it upon themselves to create or apply such an exception. On the contrary, the Rhode Island Supreme Court has consistently adhered to the principle that costs will not be awarded in the absence of a statutory or contractual provision, *see, e.g., Eleazer*, 576 A.2d at 1221; *Newport Yacht Management, Inc. v. Clark*, 567 A.2d 364, 366–67 (R.I.1989), and it has interpreted this principle narrowly. Where contractual provisions pertaining to attorneys' fees are not a "model of preciseness," fees are not awarded. *R.A. Beaufort & Sons, Inc. v. Trivisonno*, 121 R.I. 835, 403 A.2d 664, 668 (1979). Similarly, where relevant statutes are not equivocal or ambiguous, courts will not imply a legislative intent to award fees. *See, e.g., In re Craig F.*, 518 A.2d 629 (R.I.1986) (denying attorneys' fees even where agency had acted frivolously because family court had no statutory authority to award attorneys' fees). The past two decades in which the Rhode Island Supreme Court has refused to grant attorneys' fees in the absence of a clear statutory or contractual mandate outweigh the twenty-year-old dicta in *Malinou.*

Furthermore, the Rhode Island legislature has specifically considered the question of when to award attorneys' fees in shareholder derivative suits, and it has decided to award them only to defendants. Where the legislature has decided to award attorneys' fees only to one party, the court cannot imply an intent to award them to another. For example, in *Orthopedic Specialists, Inc. v. Great Atl. & Pac. Tea Co.*, 120 R.I. 378, 388 A.2d 352 (1978), the court interpreted a Rhode Island statute which granted attorneys' and witness fees to plaintiffs in workmen's compensation cases as barring doctors who had served as witnesses from seeking compensation. The court applied the maxim "*expressio unius est exclusio alterius, i.e.,* the mention of one is exclusion of another," *id.* 388 A.2d at 354, which in the instant case would prevent shareholders from recovering because the statute permits only defendants to recover in derivative suits. *See also Eleazer,* 576 A.2d at 1221 (where statute permitted attorneys' fees award against party that refused to make discovery but was silent re-

garding parties who successfully obtained protective orders, fee award would be denied in the latter situation); *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976) (where legislature explicitly provided for fee award in some situations but not in others, it is not for the courts to award attorneys' fees in the latter situation). Therefore, plaintiff may not recover attorneys' fees under Rhode Island law.

## IV.

 New York, like Rhode Island, allows the recovery of attorneys' fees only where they have been specifically provided for by statute or contract. *Glenn v. Hoteltron Systems, Inc.*, 74 N.Y.2d 386, 547 N.Y.S.2d 816, 819, 547 N.E.2d 71, 74 (1989). The relevant statute in New York permits attorneys' fees in derivative suits where "the action on behalf of the corporation was successful, in whole or in part, or if anything was received by the plaintiff or plaintiffs or a claimant or claimants as the result of a judgment, compromise or settlement of an action or claim." N.Y.Bus.Corp.Law § 626(e) (McKinney 1986). There was no judgment or settlement reached here, and the plaintiff did not recover anything on behalf of the corporation as a claimant. The issue, therefore, is whether making a demand upon the corporation without actually instituting litigation constitutes an "action" for the purposes of section 626(e).[2]

In *Ripley v. International Rys. of Cent. Am.*, 16 A.D.2d 260, 227 N.Y.S.2d 64, *aff'd*, 12 N.Y.2d 814, 236 N.Y.S.2d 64, 187 N.E.2d 131 (1962), the court addressed this very question. The shareholders in that case made "inquiries" of the corporation regarding the low rates it charged for transportation, and in order to prevent a derivative lawsuit the corporation took action to renegotiate a contract so that it received higher rates for its services. The shareholders then brought a derivative action on behalf of the corporation, as a result of which the rates were raised again. The court determined that although as a result of the shareholders' demand the corporation took action leading to the initial fare hike, the shareholders were not entitled to receive attorneys' fees for making the demand. *Id.* 227 N.Y.S.2d at 68. The court ruled that "[i]t would be unwise to authorize compensation to counsel for a stockholder whenever management took action beneficial to the corporation as a result of a request or demand by a stockholder." *Id.* Plaintiff attempts to distinguish *Ripley* on the basis that the shareholders in that case had brought a successful derivative suit for which they were awarded attorneys' fees. Plaintiff's argument is unavailing because the court in *Ripley* considered the actions taken prior to the institution of the lawsuit separately from those taken after the lawsuit was filed, and therefore the fact that a lawsuit was eventually instituted was irrelevant to the court's holding on the question at issue.

An examination of the reasons underlying the demand requirement supports the holding that the court reached in *Ripley*. Although the primary rationale for the demand requirement is to ensure that the board of directors be given the initial opportunity to manage the corporation without interference by the courts, *Barr v. Wackman*, 36 N.Y.2d 371, 368 N.Y.S.2d 497, 503–06, 329 N.E.2d 180, 185–86 (1975); *see also Galfand v. Chestnutt*, 402 F.Supp. 1318, 1331 (S.D.N.Y. 1975) (Brieant, J.), *aff'd & modified on other grounds*; 545 F.2d 807 (2d Cir.1976), an important secondary reason for the requirement is to "discourage 'strike suits' by shareholders making reckless charges for personal gain rather than corporate benefit." *Barr*, 368 N.Y.S.2d at 505, 329 N.E.2d at 186; *see also Miller v. Schreyer*, 200 A.D.2d 492, 606 N.Y.S.2d 642, 644 (1994) (demand requirement "provide[s] safeguards against strike

---

**2.** After Suprina sent his two demand letters, he learned that the company had reduced its royalty payments by approximately 50% per year. The corporation then invited him to meet with them "to discuss and disclose information that should persuade [him] that litigation would be futile." (Letter from Hasbro to Suprina of Apr. 27, 1992, *cited in* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ.J. at 4).

Plaintiff asserts that he and the corporation engaged in negotiations and settlement discussions, (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ.J. at 10), by which he presumably means this meeting. Since Hasbro had already received its benefit before the meeting occurred, the court will not consider this meeting to be part of the actions taken by plaintiff which benefitted the corporation.

suits"); *Galfand,* 402 F.Supp. at 1331 (demand requirement "prevent[s] the initiation and maintenance of strike suits brought solely to ... extract legal fees"); *Laufer v. Olla Indus., Inc.,* 96 F.R.D. 230, 233 (S.D.N.Y. 1982) (Pollack, J.) (demand requirement "protect[s] corporate directors from harassment by litigious dissidents"), *aff'd,* 729 F.2d 1444 (2d Cir.1983). Without the requirement, shareholders could bring frivolous lawsuits merely to accrue attorneys' fees or to force the company to enter into clandestine settlements, *Gordon v. Elliman,* 306 N.Y. 456, 119 N.E.2d 331, 346 (1954); *Shapiro v. Magaziner,* 418 Pa. 278, 210 A.2d 890, 894 (1965), and allowing shareholders to recover attorneys' fees for making a demand would defeat the purpose of the requirement.

■ Furthermore, the language of New York Business Corporations Law § 626 indicates that "action" does not refer to the preliminary demand on a corporation prior to the commencement of litigation. Section 626(a) refers to "[a]n action" which may be brought "to procure a judgment," which a demand cannot do. Section 626(c) provides that "[i]n any such action, the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort," implying that the initial demand is not part of the "action." Section 626(d) prohibits the discontinuance, compromise or settlement of "[s]uch action" without court approval, a requirement that clearly does not apply to a mere demand. Therefore, New York law provides no basis for recovery of attorneys' fees in a derivative lawsuit when the plaintiff has not actually initiated a lawsuit.[3]

## V.

Defendant's motion to dismiss is granted. The clerk is directed to enter final judgment in favor of defendant.

**IT IS SO ORDERED.**

---

**3.** Since the motion to dismiss is granted the court will not address defendant's motion in the alternative for summary judgment.